IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Advantage Inspection International, LLC, | ) ) ) |
| Plaintiff, | ) ) C.A. No. 6:06-3466-HMH ) |
| vs. | ) ) **OPINION & ORDER** |
| Wayne Sumner d/b/a VIP Inspection and/or Vision Reporting Systems, | ) ) ) |
| Defendant/ Third-Party Plaintiff, | ) ) ) ) |
| vs. | ) ) |
| Thomas Brent Skidmore and Sonya Skidmore, | ) ) ) |
| Third-Party Defendants. | ) ) ) |

This matter is before the court on Advantage Inspection International, LLC's ("Advantage") motion for partial summary judgment. For the reasons set forth below, the court grants in part and denies in part Advantage's motion.

I. FACTUAL AND PROCEDURAL BACKGROUND

Advantage provides home inspection and warranty services. (Am. Compl. ¶ 1.) Advantage alleges that it is the exclusive licensee of copyrights in a standardized report, known as the Advantage Home Inspection Report ("Advantage Report"), and in the software ("Advantage Software") developed for creating the Report. (Id. ¶¶ 2-3.) Advantage allows its franchisees who provide home inspection services to use the Advantage Software to generate

Advantage Reports.  (Id. ¶ 21.)  Specifically, the Advantage Software allows home inspectors to generate a standardized home inspection report by choosing from a variety of predetermined descriptions that identify and describe any damage or needed repairs observed at the house being inspected.  (Id. ¶ 11.)

Advantage alleges that it is the exclusive licensee of U.S. Copyright TX 3-375-097 for "The Advantage Home Inspection Report," which protects the arrangement, format, and appearance of the Report, and of U.S. Copyright TXu 1-069-095 for "Advantage Inspection Software and Training System," ("2001 Copyright") which protects certain aspects of the Advantage Software.  (Id. ¶¶ 12, 14; Pl.'s Mem. Supp. Mot. Compel 2.)  In addition, Advantage claims that on July 24, 2007, it filed the Copyright Application Form TX for "The 2005 Advantage Inspection, Inc. Software," which protects the source and object code of the 2005 version of the Advantage Software.  (Am. Compl. ¶¶ 16-17.)  Wayne Sumner ("Sumner") asserts that this copyright was registered on August 28, 2007, as TX 6-595-047.  (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. 2.)

Thomas Brent Skidmore ("Mr. Skidmore") originally created the first version of the Advantage Software around 1992.  (Pl.'s Mem. Supp. Summ. J. 2.)  From approximately January 5, 2001, to October 26, 2005, one of Advantage's affiliate companies, Advantage Systems, ASP, LLC hired and paid Sumner to upgrade the Advantage Software to provide it with the capability of converting paper-based reports to PDF files that could be electronically delivered and manipulated.  (Am. Compl. ¶ 24.)  Advantage alleges that in return for his work, Sumner received pay and a membership interest in Advantage Systems ASP, LLC.  According to Advantage, on July 23, 2003, Sumner assigned "the full and exclusive right" to his

improvements to the software to Mr. Skidmore. (Pl.'s Mem. Supp. Summ. J. 2.) However, Sumner alleges that this assignment was fraudulently induced and did not cover the 2001 Copyright. (Am. Third-Party Compl. ¶¶ 27-31.)

According to Advantage, Sumner was unable to create a fully functional software system. (Am. Compl. ¶ 25.) Consequently, in September 2005, Advantage informed Sumner that while he would not be terminated, it intended to hire a third-party programmer to finalize the software upgrade. (Id. ¶ 30.) However, Sumner resigned in October 2005. (Id. ¶ 31.)

Advantage alleges that shortly after resigning, Sumner began doing business as Vision Reporting Systems and/or VIP Inspections. (Id. ¶ 36.) As part of his business, Sumner began selling software entitled "Vision Reporting System Demo Version 2.3" ("Vision Software"). (Id. ¶ 40.) Advantage alleges that the Vision Software is a direct copy of the Advantage Software, and that the Vision Software generates reports that infringe the Advantage Report. Based on these allegations, Advantage has asserted claims of copyright infringement, contributory infringement, temporary and permanent injunctions, interference with actual contractual relations, and common law unfair competition against Sumner. (Am. Compl.¶¶ 76-121.)

Sumner alleges that over the past fourteen months, Mr. Skidmore and Sonya Skidmore ("Mrs. Skidmore") (collectively "Skidmores"), as Advantage's agents, have made false and defamatory statements about him, resulting in the loss of existing and prospective contracts. (Countercl. ¶¶ 17-34.) Sumner has asserted counterclaims for fraud in the inducement, slander, intentional interference with existing contractual relations, tortious interference with prospective contractual relations, and declaratory judgment. (Countercl. ¶¶ 1-39.)

On November 23, 2007, Advantage filed a motion for partial summary judgment. Sumner responded on December 11, 2007, and Advantage replied on December 17, 2007.

## II. Discussion of Law

### A. Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). With respect to this burden, "it is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's

summary judgment motion." Malina v. Baltimore Gas & Elec. Co., 18 F.Supp. 2d 596, 604 (D. Md. 1998).

### B. Advantage's Claims

#### 1. Copyright Infringement

Advantage moves for summary judgment on its claim that Sumner infringed its 2001 Copyright. (Pl.'s Mem. Supp. Summ. J. 4-19.) "In order to prove copyright infringement, a plaintiff must show that it owns a valid copyright, and it must establish that the defendant engaged in unauthorized copying of the work protected by the copyright." Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 513 (4th Cir. 2002). Mr. Skidmore's copyright certificate is prima facie evidence of copyright ownership and validity. See M. Kramer Mfg. Co. v. Andrews, 783 F.2d 421, 434 (4th Cir. 1986) (A copyright, "granted by the Copyright Office, is prima facie proof of the validity of plaintiff's copyright, including the existence of the elements of originality and fixation."). "Where direct evidence of copying is lacking, plaintiff may prove copying by circumstantial evidence in the form of proof that the alleged infringer had access to the work and that the supposed copy is substantially similar to the author's original work." Bouchat v. Baltimore Ravens, Inc., 241 F.3d 350, 353-54 (4th Cir. 2001).

Sumner does not dispute that he had access to the 2001 Copyright or that his Vision Software is substantially similar to the 2001 Copyright. (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. 4-22.) However, Sumner does dispute the ownership and validity of the 2001 Copyright.

Sumner argues that he is a co-author of the 2001 Copyright and cannot infringe upon his own copyright. (Id. 4.) Advantage concedes that while a genuine issue of material fact exists over whether Sumner is a co-author of the 2001 Copyright, there is no dispute concerning

ownership because Sumner assigned, through a written agreement, any rights that he have had to the 2001 Copyright. (Pl.'s Mem. Supp. Summ. J. 5-6.) It is undisputed that on July 23, 2002, Sumner executed an assignment ("Assignment"), assigning "the full and exclusive right to the said invention . . . and the entire right, title and interest in and to any and all Letters Patent of the United States . . . ." (Id. Ex. E (Assignment 1).) The "said invention" is identified as "certain new and useful improvements in **INTEGRATED HOME INSPECTION AND HOME WARRANTY SYSTEM** for which Provisional Patent Application No. 60/314,462 has been filed on August 23, 2001, and for which a utility patent application is being filed herewith[.]" (Id.)

Pursuant to 17 U.S.C. § 204(a), "[a] transfer of copyright ownership . . . is not valid unless an instrument of conveyance . . . is in writing and signed by the owner of the rights conveyed . . . ." Further, the written conveyance need not explicitly use the word "copyright" to be valid so long as the conveyance explicitly or implicitly conveys the rights protected with a copyright. See Armento v. Laser Image, Inc., 950 F. Supp. 719, 732-34 (W.D.N.C. 1996) (holding that an assignment giving a party "the right to reproduce a work and the right to control its reproduction" sufficient to convey a copyright. Id. at 733); Schiller & Schmidt, Inc. v. Nordisco Corp., 969 F.2d 410, 413 (7th Cir. 1992) (holding that an agreement whose "wording leaves little doubt that [the transferor] sold all the assets . . . tangible and intangible alike" was sufficient to transfer copyrights). However, courts have held that "the terms of any writing purporting to transfer copyright interests . . . must be clear" and "any ambiguity concerning the alleged transfer must be interpreted in favor of the original copyright holder." Bieg v.

6

Hovnanian Enters., Inc., 157 F. Supp. 2d 475, 480 (E.D. Pa. 2001) (internal quotation marks and citations omitted).

Pursuant to these standards, it cannot be said that the Assignment at issue clearly and unambiguously transferred Sumner's rights to the 2001 Copyright. On its face, the Assignment purports to relate to the invention covered by the patent application and does not reference the 2001 Copyright or any rights normally associated with a copyright. (Pl.'s Mem. Supp. Summ. J. Ex. E (Assignment 1).) Further, a review of the patent claim reveals that while the patent application and the 2001 Copyright both generally relate to the same subject, namely computer-generated home inspection reports, they could not be said to necessarily describe the same "invention." (Id. Ex. B (Patent Application 5-6) & Ex. E (Assignment 1).) Specifically, while the patent application, in part, covers the idea of a system utilizing computer readable instructions for recording home inspection observations, the 2001 Copyright covers a specific expression embodying that idea. (Id.) Therefore, a genuine issue of material fact exists regarding ownership of the patent based on the Assignment.

In addition, Advantage argues that it is an undisputed fact that Sumner transferred his rights in the 2001 Copyright in exchange for an ownership interest in Advantage Systems ASP, LLC. (Id. 6; Pl.'s Reply Supp. Summ. J. 2.) While it is undisputed that Sumner accepted a ten percent ownership interest in Advantage Systems in exchange for his contributions to the Advantage Software, it does not necessarily follow that Sumner intended to relinquish, in addition, any interest he might have in the 2001 Copyright resulting, in part, from those contributions. Therefore, summary judgment on Advantage's copyright infringement claim is

7

inappropriate on this ground as well. Based on the foregoing, Advantage's motion for summary judgment on its copyright infringement claim is denied.

### 2. Contributory Infringement and Injunctive Relief

Advantage moves for summary judgment on its claims of contributory infringement and injunctive relief. (Pl.'s Mem. Supp. Summ. J. 19.) Sumner argues that because "questions of fact and law remain regarding the copyrighted software, its ownership, its originality and the plaintiff assignor's obligations under the Copyright Act," Advantage's motion for summary judgment on these claims should be denied. (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. 22.) For the reasons set forth above in the discussion of Advantage's copyright infringement claim, the court finds that genuine issues of material fact regarding ownership of the 2001 Copyright remain. Therefore, Advantage's motion for summary judgment on its contributory infringement and injunctive relief claims is denied.

### 3. Duty Not to Compete

Advantage moves for summary judgment on its claim of unfair competition. (Pl.'s Mot. Summ. J. 1.) In support of its motion, Advantage asserts that as one of its members, Sumner owes a duty of loyalty to Advantage and to its other members, and that Sumner is breaching this duty by competing directly with Advantage. (Pl.'s Mem. Supp. Summ. J. 20-21.) However, Advantage's operating agreement ("Operating Agreement") provides that "[a] member who is not also a Manager owes no duties to the Company or the Members solely by reason of being a member . . . ." (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. Ex. 15 (Operating Agreement 14).) There is no evidence that Sumner is a manager of Advantage, as defined in the Operating Agreement, and Advantage has not challenged the validity of the Operating Agreement.

Pursuant to Delaware law, which the parties agree applies, "[t]o the extent that, at law or in equity, a member . . . has duties (including fiduciary duties) to a limited liability company or to another member . . . , the member's . . . duties may be . . . restricted or eliminated by provisions in the limited liability company agreement . . . ." Del. Code tit. 6 § 18-1101(c). Advantage does not dispute Sumner's claim that the Operating Agreement eliminated his duty not to compete with Advantage. Therefore, Advantage's motion for summary judgment on its claim of unfair competition is denied.

### C. Sumner's Counterclaims

### 1. Fraudulent Inducement

First, Advantage moves for summary judgment on Sumner's claim of fraudulent inducement. (Pl.'s Mem. Supp. Summ. J. 21-28.)

> The proponent of a claim of fraud in the inducement to enter into a contract must demonstrate: (1) a representation, (2) its falsity, (3) its materiality, (4) knowledge of its falsity or reckless disregard of its truth or falsity, (5) intent that the representation be acted upon, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury. The failure to prove any one of these elements is fatal to the claim.

Parker v. Shecut, 531 S.E.2d 546, 558 (S.C. Ct. App. 2000) (internal citations omitted), rev'd on other grounds, 562 S.E.2d 620 (S.C. 2002).

Sumner alleges that Advantage, by and through its agents, fraudulently induced him to assign his rights in the patent application to Advantage. (Countercl. ¶¶ 1-16.) Specifically, Sumner alleges that "sometime prior to July 2002, Advantage and Advantage Warranty agreed to sell interests in the businesses to Don Hachenberger [("Hachenberger")]." (Id. ¶ 7.) According to Sumner, "a condition of Hachenberger's investment was that Advantage have ownership of all

9

the intellectual property related to Advantage's and its affiliated business entities' ongoing businesses." (Id. ¶ 9.) Consequently, Sumner alleges that in July 2002, the Skidmores, as Advantage's agents, induced him to assign his ownership interest in the patent application to Mr. Skidmore by fraudulently "fail[ing] to disclose to Sumner prior to the transfer of his interest in the patent, that Advantage intended to sell a majority stake in Advantage after his transfer." (Id. ¶ 14.) In addition, Sumner alleges in his response to Advantage's motion for summary judgment that he considered Douglas Kim ("Kim") to be his attorney and that the Skidmores "exploited" this belief to induce him to assign his interest in the patent. (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. 26.) Finally, according to Sumner, Advantage and Kim failed "to inform Sumner of the likelihood that his shares would become worthless after the assignment . . . ." (Id. 27.)

    Advantage argues that Sumner's claim for fraudulent inducement is barred by the statute of limitations. In South Carolina, the statute of limitations for an action alleging fraud is three years. S.C. Code Ann. § 15-3-530(7) (2005). The statute of limitations "does not begin to run until discovery of the fraud itself or of such facts as would have led to the knowledge thereof, if pursued with reasonable diligence." Burgess v. Am. Cancer Soc'y, S.C. Div., Inc., 386 S.E.2d 798, 799 (S.C. Ct. App. 1989) (internal quotation marks omitted). The undisputed evidence is that Sumner learned of the agreement to sell an ownership interest in "Advantage and Advantage Warranty" a "few days" after the July 23, 2002, meeting during which he executed the assignment. (Pl.'s Mem. Supp. Summ. J. Ex. D (Sumner Depo. 71-72).) Thus, this is the date on which Sumner discovered the alleged fraud, which triggered the running of the statute of limitations. Sumner's argument that he did not discover additional facts connected with the

alleged fraud until later is misplaced as his "actual . . . knowledge of facts or circumstances, indicative of fraud, trigger[ed] a duty on [his] part to exercise reasonable diligence in investigating and, ultimately, in pursuing a claim arising therefrom." Id. at 800.

In addition, Sumner argues that Advantage should be estopped from asserting the statute of limitations "because of [its] actions and the actions of [its] attorneys." (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. 28.) The "actions" referred to by Sumner are apparently the same as those that provide the basis for his fraudulent inducement claim as set forth above.

"A defendant may be estopped from claiming the statute of limitations as a defense if the delay that otherwise would give operation to the statute had been induced by the defendant's conduct." RWE NUKEM Corp. v. ENSR Corp., 644 S.E.2d 730, 734 (S.C. 2007) (internal quotation marks and alterations omitted). "The inducement may consist of an express representation that the claim will be settled without litigation or conduct that suggests a lawsuit is not necessary." Id. Sumner presents no evidence of any such conduct or any other conduct by Advantage that induced Sumner's delay in bringing his fraudulent inducement claim after his discovery of the alleged fraud in July 2002. Therefore, Sumner's claim is barred by the three-year statute of limitations, and Advantage is entitled to summary judgment on Sumner's claim of fraudulent inducement.

### 2. Intentional Interference with Existing Contractual Relations

Second, Advantage moves for summary judgment on Sumner's claim for intentional interference with existing contractual relations. (Pl.'s Mem. Supp. Summ. J. 28-31.) In order to prove a prima facie case of intentional interference with existing contractual relations, Sumner must prove the following elements: "(1) the contract; (2) the wrongdoer's knowledge thereof;

(3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom." DeBerry v. McCain, 274 S.E.2d 293, 296 (S.C. 1981).

Sumner alleges that Advantage, "by and through its agents, made defamatory statements to Sumner's clients, tortuously [sic] interfering with his contractual relations." (Countercl. ¶ 25.) Advantage moves for summary judgment on the ground that Sumner fails to present evidence of any contracts that were breached as a result of the Skidmores' allegedly defamatory statements. (Pl.'s Mem. Supp. Summ. J. 28-31.) In his response, Sumner points to two contracts that were breached as a result of the Skidmores' statements.

First, Sumner asserts that he had "a verbal agreement with Mr. [Robert] Sams [("Sams")] to distribute his business cards to potential buyers as a home inspector referral." (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. 29.) However, Sumner fails to allege or present evidence of any consideration on his part to support Sams's agreement to distribute his business cards, and consequently fails to assert allegations sufficient to support a finding that a contract existed. See Rabon v. State Fin. Corp., 26 S.E.2d 501, 502 (S.C. 1943) ("[N]o contract is complete without a valid, legal consideration."). In addition, Sumner fails to present evidence that Advantage knew of his agreement with Sams and intentionally procured its breach. (Id. & Ex. 2 (Sumner Decl. ¶¶ 32-34).) In fact, Sumner refers to the statements as "reckless behavior." (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. 30) However, to prove a prima facie case, Sumner is required to prove the *intentional* procurement of the breach of a known contract. See DeBerry, 274 S.E.2d at 296. Therefore, to the extent Sumner supports his intentional interference with existing contractual relations claim on his "agreement" with Sams, his claim is subject to summary judgment.

Second, Sumner alleges that the Skidmores' allegedly defamatory statements resulted in the breach of his contract with Mr. Nick Gromicko, who is president of the National Association of Certified Home Inspectors. (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. 30.) However, as with Sumner's agreement with Sams, Sumner fails to allege or provide any evidence that Advantage or its agents knew of the alleged contract and intentionally interfered with it. (Id. 30-31 & Ex. 2 (Sumner Decl. ¶¶ 32-34).) Therefore, Sumner has presented insufficient evidence to create a genuine issue of material fact and Advantage's motion for summary judgment on Sumner's claim for intentional interference with existing contractual relations is granted.

### 3. Intentional Interference with Prospective Contractual Relations

Finally, Advantage moves for summary judgment on Sumner's claim of intentional interference with prospective contractual relations. (Pl.'s Mem. Supp. Summ. J. 31-34.) In order to prove a claim of intentional interference with existing contractual relations, Sumner must prove "(1) the defendant intentionally interfered with the plaintiff's potential contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff." Crandall Corp. v. Navistar Int'l Transp. Corp., 395 S.E.2d 179, 180 (S.C. 1990). Further, "a cause of action for intentional interference with prospective contractual relations generally stands following the loss of an identifiable contract or expectation" and "[t]he plaintiff must actually demonstrate . . . that he had a truly prospective (or potential) contract with a third party." United Educ. Distribs., LLC v. Educ. Testing Serv., 564 S.E.2d 324, 328-29 (S.C. Ct. App. 2002). Thus, the potential "contracts cannot be speculative" and "the mere hope of a contract is insufficient." Id. at 330.

Sumner alleges that Advantage, by and through its agents, "made repeated defamatory statements to Sumner's potential clients throughout the upstate of South Carolina, including statements made at the South Carolina Association of Realtors Convention." (Countercl. ¶ 31.) Advantage moves for summary judgment on the ground that Sumner has failed to identify any potential contracts that were disrupted by the allegedly defamatory statements made by Advantage's agents. (Pl.'s Mem. Supp. Summ. J. 31-34.) In his response, Sumner does not identify any prospective contracts, but generally asserts that his claim is not subject to summary judgment because the alleged statements were made "to a group that is a primary source of business for vendors in the home inspection business (2006 South Carolina Association of Realtors Convention)" and "in the defendant's business community." (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. 31.) These allegations, however, support nothing more than "the mere hope of a contract" and are insufficient to support a claim of intentional interference with prospective contractual relations. United Educ. Distribs., LLC, 564 S.E.2d at 330. Therefore, Advantage's motion for summary judgment on Sumner's intentional interference with prospective contractual relations claim is granted. Based on the foregoing, Advantage's motion for summary judgment is granted in part and denied in part.

It is therefore

**ORDERED** that the Plaintiff's motion for partial summary judgment, docket number 81, is granted in part and denied in part.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
January 15, 2008