IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Advantage Inspection International, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. 6:06-3466-HMH |
| vs. | ) ) ) | **OPINION & ORDER** |
| Wayne Sumner d/b/a VIP Inspection and/or Vision Reporting Systems, | ) ) ) | |
| Defendant/ Third-Party Plaintiff, | ) ) ) ) | |
| vs. | ) ) | |
| Thomas Brent Skidmore and Sonya Skidmore, | ) ) ) | |
| Third-Party Defendants. | ) ) | |

This matter is before the court on Thomas Brent Skidmore ("Mr. Skidmore") and Sonya Skidmore's ("Mrs. Skidmore") (collectively "Skidmores") motion for partial summary judgment. For the reasons set forth below, the court grants in part and denies in part the Skidmores' motion.

I. FACTUAL AND PROCEDURAL BACKGROUND

Advantage Inspection International, LLC ("Advantage") provides home inspection and warranty services. (Am. Compl. ¶ 1.) Advantage alleges that it is the exclusive licensee of copyrights in a standardized report, known as the Advantage Home Inspection Report ("Advantage Report"), and in the software ("Advantage Software") developed for creating the Report. (Id. ¶¶ 2-3.) Advantage allows its franchisees who provide home inspection services to

use the Advantage Software to generate Advantage Reports. (Id. ¶ 21.) Specifically, the Advantage Software allows home inspectors to generate a standardized home inspection report by choosing from a variety of predetermined descriptions that identify and describe any damage or needed repairs observed at the house being inspected. (Id. ¶ 11.)

Advantage alleges that it is the exclusive licensee of U.S. Copyright TX 3-375-097 for "The Advantage Home Inspection Report," which protects the arrangement, format, and appearance of the Report, and of U.S. Copyright TXu 1-069-095 for "Advantage Inspection Software and Training System," ("2001 Copyright") which protects certain aspects of the Advantage Software. (Id. ¶¶ 12, 14; Pl.'s Mem. Supp. Mot. Compel 2.) In addition, Advantage claims that on July 24, 2007, it filed the Copyright Application Form TX for "The 2005 Advantage Inspection, Inc. Software," which protects the source and object code of the 2005 version of the Advantage Software. (Am. Compl. ¶¶ 16-17.) Wayne Sumner ("Sumner") asserts that this copyright was registered on August 28, 2007, as TX 6-595-047. (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. 2.)

Mr. Skidmore originally created the first version of the Advantage Software around 1992. (Pl.'s Mem. Supp. Summ. J. 2.) From approximately January 5, 2001, to October 26, 2005, one of Advantage's affiliate companies, Advantage Systems, ASP, LLC hired and paid Sumner to upgrade the Advantage Software to provide it with the capability of converting paper-based reports to PDF files that could be electronically delivered and manipulated. (Am. Compl. ¶ 24.) Advantage alleges that in return for his work, Sumner received pay and a membership interest in Advantage Systems ASP, LLC. According to Advantage, on July 23, 2003, Sumner assigned "the full and exclusive right" to his improvements to the software to Mr. Skidmore. (Pl.'s Mem.

Supp. Summ. J. 2.)  However, Sumner alleges that this assignment was fraudulently induced and did not cover the 2001 Copyright.  (Am. Third-Party Compl. ¶¶ 27-31.)

According to Advantage, Sumner was unable to create a fully functional software system. (Am. Compl. ¶ 25.)  Consequently, in September 2005, Advantage informed Sumner that while he would not be terminated, it intended to hire a third-party programmer to finalize the software upgrade.  (Id. ¶ 30.)  However, Sumner resigned in October 2005.  (Id. ¶ 31.)

Advantage alleges that shortly after resigning, Sumner began doing business as Vision Reporting Systems and/or VIP Inspections.  (Id. ¶ 36.)  As part of his business, Sumner began selling software entitled "Vision Reporting System Demo Version 2.3" ("Vision Software"). (Id. ¶ 40.)  Advantage alleges that the Vision Software is a direct copy of the Advantage Software, and that the Vision Software generates reports that infringe the Advantage Report. Based on these allegations, Advantage has asserted claims of copyright infringement, contributory infringement, temporary and permanent injunctions, interference with actual contractual relations, and common law unfair competition against Sumner.  (Am. Compl. ¶¶ 76-121.)

Sumner alleges that over the past fourteen months, the Skidmores, have made false and defamatory statements about him, resulting in the loss of existing and prospective contracts. (Am. Third-Party Complaint ¶¶ 39-54.)  Sumner has asserted counterclaims for fraud in the inducement, slander, intentional interference with existing contractual relations, tortious interference with prospective contractual relations, and declaratory judgment.  (Countercl. ¶¶ 1-39.)  In addition, Sumner has asserted cross-claims against the Skidmores for fraud in the inducement, breach of fiduciary duty, slander, intentional interference with existing contractual

relations, tortuous [sic] interference with prospective contractual relations and cross-claims against Mr. Skidmore for an accounting and conversion. (Am. Third-Party Compl. ¶¶ 27-62.)

On November 23, 2007, the Skidmores filed a motion for partial summary judgment. Sumner responded on December 11, 2007, and the Skidmores replied on December 17, 2007.

## II. Discussion of the Law

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

With respect to this burden, "it is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion." Malina v. Baltimore Gas & Elec. Co., 18 F.Supp. 2d 596, 604 (D. Md. 1998).

### B.  Sumner's Claims

#### 1.  Fraudulent Inducement

First, the Skidmores move for summary judgment on Sumner's claim of fraudulent inducement. (Third-Party Defs.' Mem. Supp. Summ. J. 2-8.)

> The proponent of a claim of fraud in the inducement to enter into a contract must demonstrate: (1) a representation, (2) its falsity, (3) its materiality, (4) knowledge of its falsity or reckless disregard of its truth or falsity, (5) intent that the representation be acted upon, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury. The failure to prove any one of these elements is fatal to the claim.

Parker v. Shecut, 531 S.E.2d 546, 558 (S.C. Ct. App. 2000) (internal citations omitted), rev'd on other grounds, 562 S.E.2d 620 (S.C. 2002).

Sumner alleges that the Skidmores fraudulently induced him to assign his rights in the patent application to Advantage. (Am. Third-Party Compl. ¶¶ 27-31.) Specifically, Sumner alleges that "[t]he Skidmores intentionally and deliberatively [sic] failed to disclose to Sumner prior to the transfer of his intellectual property that Advantage Systems intended to sell a majority stake to [Donald] Hachenberger and that the sale was predicated on Sumner's transfer." (Id. ¶ 28.) In addition, Sumner alleges in his response to the Skidmores' motion for summary judgment that he considered Douglas Kim ("Kim") to be his attorney and that the Skidmores "exploited" this belief to induce him to assign his interest in the patent. (Def.'s Mem. Opp'n

Third-Party Defs.' Mot. Summ. J. 3.) Finally, according to Sumner, the Skidmores and Kim failed "to inform Sumner of the likelihood that his shares would become worthless after the assignment . . . ." (Id. 5.)

The Skidmores argue that Sumner's claim for fraudulent inducement is barred by the statute of limitations. In South Carolina, the statute of limitations for an action alleging fraud is three years. S.C. Code Ann. § 15-3-530(7) (2005). The statute of limitations "does not begin to run until discovery of the fraud itself or of such facts as would have led to the knowledge thereof, if pursued with reasonable diligence." Burgess v. Am. Cancer Soc'y, S.C. Div., Inc., 386 S.E.2d 798, 799 (S.C. Ct. App. 1989) (internal quotation marks omitted). The undisputed evidence is that Sumner learned of the agreement to sell an ownership interest in "Advantage and Advantage Warranty" a "few days" after the July 23, 2002, meeting during which he executed the assignment. (Pl.'s Mem. Supp. Summ. J. Ex. D (Sumner Depo. 71-72).) Thus, this is the date on which Sumner discovered the alleged fraud, which triggered the running of the statute of limitations. His argument that he did not discover additional facts connected with the alleged fraud until later is misplaced as his "actual . . . knowledge of facts or circumstances, indicative of fraud, trigger[ed] a duty on the part of [Sumner] to exercise reasonable diligence in investigating and, ultimately, in pursuing a claim arising therefrom." Burgess, 386 S.E.2d at 800.

In addition, Sumner argues that the Skidmores should be estopped from asserting the statute of limitations "because of their actions and the actions of their attorneys." (Def.'s Mem. Opp'n Pl.'s Mot. Summ. J. 28.) The "actions" referred to by Sumner are apparently the same as those that provide the basis for his fraudulent inducement claim as set forth above.

"A defendant may be estopped from claiming the statute of limitations as a defense if the

6

delay that otherwise would give operation to the statute had been induced by the defendant's conduct." RWE NUKEM Corp. v. ENSR Corp., 644 S.E.2d 730, 734 (S.C. 2007) (internal quotation marks and alterations omitted). "The inducement may consist of an express representation that the claim will be settled without litigation or conduct that suggests a lawsuit is not necessary." Id. Sumner presents no evidence of any such conduct or any other conduct by the Skidmores that induced Sumner's delay in bringing his fraudulent inducement claim after his discovery of the alleged fraud in July 2002. Therefore, Sumner's claim is barred by the three-year statute of limitations, and the Skidmores are entitled to summary judgment on Sumner's fraudulent inducement claim.

### 2. Intentional Interference with Existing Contractual Relations

Second, the Skidmores move for summary judgment on Sumner's claim for intentional interference with existing contractual relations. (Third-Party Defs.' Mem. Supp. Summ. J. 10-12.) In order to prove a prima facie case of intentional interference with existing contractual relations, Sumner must prove the following elements: "(1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom." DeBerry v. McCain, 274 S.E.2d 293, 296 (S.C. 1981).

Sumner alleges that "the Skidmores intentionally made defamatory remarks to Sumner's clients in order to interfere with his contractual relations." (Am. Third-Party Compl. ¶ 45.) The Skidmores move for summary judgment on the ground that Sumner fails to present evidence of any contracts that were breached as a result of the Skidmores' allegedly defamatory statements. (Third-Party Defs.' Mem. Supp. Summ. J. 10-13.) In his response, Sumner points to two contracts that were breached as a result of the Skidmores' statements.

First, Sumner asserts that he had "a verbal agreement with Mr. [Robert] Sams [("Sams")] to distribute his business cards to potential buyers as a home inspector referral." (Def.'s Mem. Opp'n Third-Party Defs.' Mot. Summ. J. 11.) However, Sumner fails to allege or present evidence of any consideration on his part to support Sams's agreement to distribute his business cards, and consequently fails to assert allegations sufficient to support a finding that a contract existed. See Rabon v. State Fin. Corp., 26 S.E.2d 501, 502 (S.C. 1943) ("[N]o contract is complete without a valid, legal consideration."). In addition, Sumner fails to present evidence that Advantage knew of his agreement with Sams and intentionally procured its breach. (Id. & Ex. 2 (Sumner Decl. ¶¶ 32-34).) Therefore, to the extent Sumner supports his intentional interference with existing contractual relations claim on his "agreement" with Sams, his claim is subject to summary judgment.

Second, Sumner alleges that the Skidmores' allegedly defamatory statements resulted in the breach of his contract with Mr. Nick Gromicko, who is president of the National Association of Certified Home Inspectors. (Def.'s Mem. Opp'n Third-Party Defs.' Mot. Summ. J. 12.) However, as with Sumner's agreement with Sams, Sumner fails to allege or provide any evidence that Advantage or its agents knew of the alleged contract and intentionally interfered with it. (Id. 30-31 & Ex. 2 (Sumner Decl. ¶¶ 32-34).) Therefore, Sumner has presented insufficient evidence to create a genuine issue of material fact and the Skidmores' motion for summary judgment on Sumner's claim for intentional interference with existing contractual relations is granted.

### 3. Intentional Interference with Prospective Contractual Relations

Third, the Skidmores move for summary judgment on Sumner's claim of intentional interference with prospective contractual relations. (Third-Party Defs.' Mem. Supp. Summ. J. 13-17.) In order to prove a claim of intentional interference with existing contractual relations, Sumner must prove "(1) the defendant intentionally interfered with the plaintiff's potential contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff." Crandall Corp. v. Navistar Int'l Transp. Corp., 395 S.E.2d 179, 180 (S.C. 1990). Further, "a cause of action for intentional interference with prospective contractual relations generally stands following the loss of an identifiable contract or expectation" and "[t]he plaintiff must actually demonstrate . . . that he had a truly prospective (or potential) contract with a third party." United Educ. Distribs., LLC v. Educ. Testing Serv., 564 S.E.2d 324, 328-29 (S.C. Ct. App. 2002). Thus, the potential "contracts cannot be speculative" and "the mere hope of a contract is insufficient." Id. at 330.

Sumner alleges that the Skidmores "made repeated defamatory statements to Sumner's potential clients throughout the upstate of South Carolina, including statements made at the South Carolina Association of Realtors Convention." (Am. Third-Party Compl. ¶ 51.) The Skidmores move for summary judgment on the ground that Sumner has failed to identify any potential contracts that were disrupted by their allegedly defamatory statements. (Third-Party Defs.' Mem. Supp. Summ. J. 13-16.) In his response, Sumner does not identify any prospective contracts, but generally asserts that his claim is not subject to summary judgment because the alleged statements were made "to a group that is a primary source of business for vendors in the home inspection business (2006 South Carolina Association of Realtors Convention in Myrtle

9

Beach)" and "in the defendant's business community." (Def.'s Mem. Opp'n Third-Party Defs.' Mot. Summ. J. 12-13.) These allegations, however, support nothing more than "the mere hope of a contract" and are insufficient to support a claim of intentional interference with prospective contractual relations. United Educ. Distribs., LLC, 564 S.E.2d at 330. Therefore, the Skidmores' motion for summary judgment on Sumner's intentional interference with prospective contractual relations claim is granted.

### 4. Breach of Fiduciary Duty

Fourth, the Skidmores move for summary judgment on Sumner's claim of breach of fiduciary duty. (Third-Party Defs.' Mem. Supp. Summ. J. 8.) Sumner's claim rests on his allegation that the Skidmores used Advantage's assets for personal use. (Third-Party Compl. ¶¶ 32-38.) However, Sumner has presented no evidence that the Skidmores spent Advantage's money for personal use. (Third-Party Defs.' Mem. Supp. Summ. J. Additional Attach. (Sumner Depo. 167-169).)

Sumner argues that this claim will be further bolstered "when and if [Advantage] provides the financial information ordered by [the] Court on November 28, 2007." (Def.'s Mem. Opp'n Third-Party Defs.' Mot. Summ. J. 10.) However, Advantage asserts that it has produced all files and documents covered by the court's November 28, 2007, order. (Third-Party Defs.' Reply Supp. Summ. J. 7-8.) Therefore, because Sumner has presented no evidence that the Skidmores breached their fiduciary duty, the court grants the Skidmores' motion for summary judgment on Sumner's claim of breach of fiduciary duty.

### 5. Claims for Accounting and Conversion

Finally, the Skidmores move for summary judgment on Sumner's claims for an accounting and conversion. (Third-Party Defs.' Mem. Supp. Summ. J. 17-18.) The Skidmores argue that they are entitled to summary judgment on these claims because it is undisputed that Sumner is not a co-owner of the Advantage Software. (Id. 17.) However, as set forth in the court's order denying Advantage's motion for summary judgment on its copyright infringement claim, genuine issues of fact remain regarding ownership of the Advantage Software. Therefore, the Skidmores' motion for summary judgment on Sumner's claims for an accounting and conversion is denied.

It is therefore

**ORDERED** that the Third-Party Defendants' motion for partial summary judgment, docket number 82, is granted in part and denied in part.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
January 15, 2008

11